IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE: MOTION TO UNSEAL COURT RECORDS<br><br>CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST,<br><br>Petitioner. | Misc. No. 18-00477 JMS-RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR RECONSIDERATION, ECF NO. 13 |

## <u>ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR RECONSIDERATION, ECF NO. 13</u>

### I. <u>INTRODUCTION</u>

On December 14, 2018, Petitioner Civil Beat Law Center for the Public Interest ("Law Center") filed its "Motion to Unseal Court Records," moving to unseal court records filed in *United States v. Katherine P. Kealoha*, Cr. No. 17-00582 JMS-RLP-1. ECF No. 1. On December 21, 2018, Magistrate Judge Puglisi issued his "Order Denying Civil Beat Law Center for the Public Interest's Motion to Unseal Court Records," and the Law Center appealed the decision on December 31, 2018. ECF Nos. 7, 8. On February 20, 2019, the court issued its "Order Affirming in Part and Reversing in Part Magistrate Judge's Order Denying

Petitioner's Motion to Unseal Court Records, ECF No. 7" ("February 20 Order").
ECF No. 12.  The February 20 Order unsealed a number of documents (but not all) related to Katherine Kealoha's ("Kealoha") competency evaluation.  *See id.* at PageID # 88-90.  Currently before the court is the Law Center's March 6, 2019 Motion for Reconsideration of the February 20 Order ("Motion for Reconsideration").[1]  ECF No. 13.  Kealoha filed a Response to the Motion for Reconsideration on March 21, 2019, ECF No. 15, and the United States filed its Response on March 22, 2019, ECF No. 16.  The Law Center filed a Reply on March 25, 2019.  ECF No. 19.  Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing.

---

[1] Reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact." Local Rule 60.1; *see also Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  "There may also be other, highly unusual, circumstances warranting reconsideration." *ACandS, Inc.*, 5 F.3d at 1263.

A "motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).  "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

Prior to the unsealing of documents in the February 20 Order, the Law Center did not have knowledge of the subject matter of the documents, which all concerned Kealoha's competency evaluation.  Accordingly, the Motion for Reconsideration was the Law Center's first opportunity to bring arguments tailored to this specific type of court proceeding.  Further, the Law Center has provided facts and law of a "strongly convincing nature."  For these reasons, discussed in more detail below, the court will reconsider its February 20 Order.

Based on the following, the court GRANTS in part and DENIES in part the Motion for Reconsideration. The court will file redacted versions of the contested documents.

## II. DISCUSSION

In its February 20 Order, the court found that a qualified First Amendment right of access attaches to mental competency hearings, ECF No. 12 at Page ID # 86, and thus "the press and the public have a presumed right of access to [those] court proceedings and documents," *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir. 1990) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1985) ("*Press-Enterprise I*")). But when the First Amendment right of access attaches, it is still a qualified right:

> [t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise I*, 464 U.S. at 510; *see also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*") ("But even when a right of access attaches, it is not absolute."). Applying these principles, the February 20

Order kept the competency evaluation report sealed to protect Kealoha's right to privacy in her medical information. The February 20 Order also kept the competency hearing and any associated transcripts sealed.

Now, the Law Center moves the court to reconsider the February 20 Order, arguing for public release of the competency evaluation report and the transcript of the competency hearing. ECF No. 13 at PageID # 96. The Law Center cites several cases where competency hearing transcripts and competency evaluation reports were made public (at least in part) and argues that any redactions should be limited in scope. *Id.* at PageID # 98-100, # 108-113.

Kealoha opposes any unsealing of the competency evaluation report, while the government argues that "it may be appropriate" to release a redacted version of the report.[2] ECF No. 15 at PageID # 678-79; ECF No. 16 at PageID # 684-85. Kealoha does not object to unsealing limited portions of the competency hearing transcript, and the government similarly argues that "it may be appropriate" to release a redacted version.[3] ECF No. 15 at PageID # 678-79; ECF No. 16 at PageID # 684.

---

[2] Neither Kealoha nor the government has access to the sections of the competency evaluation report that discussed attorney-client communications.

[3] The government was not present for the in camera portion of the December 13, 2018 hearing.

The court has reviewed these sealed documents and will release redacted versions of both. These redactions will be made only where essential to preserve higher values (in this instance, the right to privacy of medical information, the attorney-client privilege, and the right to a fair trial) and are narrowly tailored to serve that interest. *See Press-Enterprise I*, 464 U.S. at 510. The court discusses the legal framework of each "higher value" and then makes specific findings. *See id.*

**A.     Legal Framework**

  *1.     Right to Privacy in Medical Information*

As a general matter, the Supreme Court has not definitively answered whether there is a constitutional right to privacy in personal information (such as medical information). *See Nat'l Aeronautics & Space Admin. v. Nelson,* 562 U.S. 134, 147 n.10 (2011); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457-58 (1977); *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). While the Ninth Circuit has not ruled on the narrower issue of whether "the constitution protects medical privacy," *Seaton v. Mayberg*, 610 F.3d 530, 536 (9th Cir. 2010), a number of other courts have recognized such a right. *See Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995) (collecting cases) ("A number of cases in the lower federal courts, including our own, building on *Whalen* and *Nixon*, recognize a qualified constitutional right

to the confidentiality of medical records and medical communications."); *see also Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) ("We have long recognized the right to privacy in one's medical information . . . ."); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("Information about one's body and state of health is matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life." (quotation marks omitted)); *United States v. McVeigh*, 918 F. Supp. 1452, 1466 (W.D. Okla. 1996) ("There may be records sealed to protect the privacy interests of the defendants in custody, such as matters relating to physical or mental health."); *cf. J.P. v. DeSanti*, 653 F.2d 1080, 1087-91 (6th Cir. 1981).

With that backdrop, the court reviews two Ninth Circuit cases — *United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012) and *United States v. Kaczynski*, 154 F.3d 930 (9th Cir. 1998) — both of which have addressed a defendant's privacy rights in the context of competency hearings. *Guerrero* rejected the trial court's finding that "a defendant surrenders his right to privacy because he may not be constitutionally fit to stand trial" and stated: "The constitutional imperative to not try incompetent defendants does not itself deprive possibly incompetent individuals of their privacy rights. Moreover, courts have given weight to the privacy interests of defendants when considering access to

6

judicial proceedings and related documents." 693 F.3d at 1003 (citations and quotation marks omitted). *Kaczynski* concluded that the trial court "properly balanced the public's legitimate interest in access to the report . . . with the countervailing *privacy interests* asserted by Kaczynski." *Kaczynski*, 154 F.3d at 932 (emphasis added).

Also, both *Guerrero* and *Kaczynski* held that redactions (rather than a complete bar to access) were a proper alternative when needed to balance privacy rights with the First Amendment presumption of access. *Guerrero*, 693 F.3d at 1003; *Kaczynski*, 154 F.3d at 932.

### 2. *Attorney-Client Privilege*

Intrusion into the attorney-client privilege may constitute a violation of the Sixth Amendment, but only if it rises to substantial prejudice. *See United States v. Kowalczyk*, 805 F.3d 847, 856 n.2 (9th Cir. 2015). In the context of sealing matters related to competency evaluations, *Kowalczyk* stated that "[s]ubstantial prejudice results, for example, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Id.* (citation and quotation marks omitted).

In the context of sealing matters related to competency evaluations, *Guerrero* recognized that defendants have the protections of the attorney-client privilege, but also stated that:

> Guerrero has not shown that his interest in maintaining the confidentiality of his attorney communications would be significantly harmed if the proceeding is open. Guerrero has already agreed to share the privileged documents with the Government and his co-defendant, and the district court has issued an order that prohibits the use at trial of privileged information disclosed during the competency hearing. Because Guerrero's confidential communications will not be used against him in a criminal proceeding, his primary interest in the privilege is protected.

693 F.3d at 1003-04 (citation omitted).

### 3. *Fair Trial*

"Closure [of a court proceeding] may be ordered on the basis of a defendant's Sixth Amendment right to a fair trial only if, 'first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id.* at 1002 (quoting *Press-Enterprise II*, 478 U.S. at 14). "[W]e look to the publicity's capacity to inflame and prejudice the entire community [and whether it] . . . create[s] a pattern

of deep and bitter prejudice throughout the community." *Id.* (citation and quotation marks omitted).

**B.     Specific Findings**

While the court will release the competency hearing transcript and the competency evaluation report, both documents will be redacted where it is "essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510. As required, the court now makes specific findings as to those redactions. *See id.*

*1.     Competency Hearing Transcript*

The beginning of the December 13, 2018 hearing before Magistrate Judge Puglisi concerned Kealoha's competency evaluation and was held with all parties present. *See Kealoha*, Cr. No. 17-00582 JMS-RLP, ECF No. 289-1. The court will unseal this part of the transcript. *See id.* After that hearing, an in camera hearing was held with only Kealoha and her attorney, Cynthia Kagiwada, in attendance. *See id.* The subject matter of the in camera hearing did not involve the competency evaluation determination, and further, it included matters that directly implicate the attorney-client privilege and Kealoha's right to a fair trial. Therefore, the court will redact all parts of the transcript relating to the in camera hearing. Kealoha's interest in maintaining the confidentiality of those attorney-client

9

communications would be "significantly harmed" if that transcript was made available to either the government or the public, *Guerrero*, 693 F.3d at 1003, and access to those communications is likely to give "the prosecution an unfair advantage at trial," *United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir. 2003) (citation and quotation marks omitted).

2. *Competency Evaluation Report*

A redacted version of the competency evaluation report, ECF No. 292, was previously provided to the government and Kealoha, but not the public. Prior to allowing that access, Magistrate Judge Puglisi redacted portions of the report to remove mentions of attorney-client communications. The court finds that Kealoha would be "significantly harmed" if those communications were made available to either the government or the public, *Guerrero*, 693 F.3d at 1003, and access to those communications is likely to give "the prosecution an unfair advantage at trial," *Danielson*, 325 F.3d at 1069 (citation and quotation marks omitted). Thus, these redactions remain in effect.

The court will also protect Kealoha's privacy rights by redacting the majority of Kealoha's medical information from the competency evaluation report. The public will still have access to some information arising from the competency evaluation itself — including observations made and tests conducted by the

forensic psychiatrist — in order to support the public's "interest in obtaining information bearing on the workings of the criminal justice system." *Kaczynski*, 154 F.3d at 932.

Finally, the court will make two additional redactions to the competency evaluation report — each of which contain a comment made by Kealoha. These comments have great potential to prejudice Kealoha, while adding little to the public's understanding of the competency evaluation. This is particularly true in light of the publicity in this case and the rapidly approaching trial date. Thus, the following redactions are made to preserve Kealoha's right to a fair trial: (1) on the second page of the report, in the third paragraph under the heading "Present History"; and (2) on the third page of the report, in the last paragraph before the heading "Psychiatric History."

///

///

///

///

///

///

///

## III. CONCLUSION

For the foregoing reasons, the Motion for Reconsideration is GRANTED in part and DENIED in part. Redacted versions of the competency hearing transcript and the competency evaluation report will be filed by the court.[4]

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 4, 2019.



    /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*In Re: Motion to Unseal Court Records*, Misc. No. 18-00477 JMS-RLP, Order Granting in Part and Denying in Part Petitioner's Motion for Reconsideration, ECF No. 13

---

[4] The redacted transcript will be made available pursuant to the Guide to Judiciary Policy. *See* Guide to Judiciary Policy, Vol. 6 §§ 510.25, 510.25.10, available at http://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-6-court-reporting/ch-5-transcripts.